1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACLYN RIPPEE, an individual on behalf of herself and in a representative capacity for all others similarly situated, | CASE NO. 05cv1359 BTM(JMA) |
| Plaintiffs, | **MEMORANDUM DECISION APPROVING CLASS ACTION SETTLEMENT AND ATTORNEY'S FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENTS; ORDER RE: FINAL JUDGMENT AND RETENTION OF JURISDICTION OVER SETTLEMENT** |
| vs. | |
| BOSTON MARKET CORPORATION, and DOES 1 through 50, inclusive, | |
| Defendants. | CASE NO. 05cv1360 BTM(JMA) |
| GERALDINE BARILE, an individual; ALFREDO PONCE, an individual; and ROES 1-10 on behalf of themselves and in a representative capacity for all others similarly situated, | |
| Plaintiffs, | |
| vs. | |
| BOSTON MARKET CORPORATION, and DOES 1 through 50, inclusive, | |
| Defendants. | |

On June 7, 2006, motions for final approval of class action settlement and motions for attorney's fees, costs, and class representative enhancements were filed in these cases. Defendant Boston Market Corp. ("Boston Market") gave notice of the proposed settlement to the applicable federal and state officials as required by 28 U.S.C. § 1715.

1

On October 5, 2006, the Court held a hearing on the motions. To the Court's knowledge, no class member or state or federal official has objected to the proposed settlements. For the reasons set forth below, the Court approves the proposed settlements and grants the motions for attorney's fees, costs, and class representative enhancements.

## I. BACKGROUND

The Barile and Rippee actions were commenced in state court on May 27, 2005. The Rippee complaint alleges that Boston Market Corp. ("Boston Market") violated the California Labor Code by failing to provide meal periods, failing to permit and authorize rest breaks, failing to pay overtime, failing to pay for off-the-clock work and failing to provide accurate wage statements. The Barile complaint alleges that Boston Market violated the California Labor Code by mis-classifying General Managers as exempt employees and failing to pay them overtime pay. Furthermore, both complaints allege that by engaging in wage and hour violations, Boston Market committed unfair business practices in violation of Cal. Bus. & Prof. Code, conversion, and theft of labor. The relief sought in both actions includes, but is not limited to, monetary damages, penalties, injunctive relief, interest, attorney's fees and costs.

On July 5, 2005, Boston Market removed the Barile and Rippee actions to this Court. In Rippee, the Court ordered Boston Market to show cause why the action should not be remanded for lack of jurisdiction. In an order filed on August 15, 2005, the Court continued the OSC and allowed expedited discovery on the issue of the amount in controversy. In an order filed on April 4, 2006, the Court found that Boston Market had established that the amount-in-controversy requirement had been satisfied.

In Barile, Plaintiffs filed a motion to remand the case for lack of jurisdiction. In an order filed on October 31, 2005, the Court denied the motion to remand, explaining that it was satisfied that the amount in controversy exceeded $5,000,000.

On April 5, 2006, the Court issued in both cases an order granting preliminary approval of class action settlement and certifying the settlement class.

## II. <u>TERMS OF THE SETTLEMENT</u>

The primary features of the proposed settlement are as follows:

<u>Present Monetary Benefit</u>

The claims of all putative class members in both the <u>Rippee</u> and <u>Barile</u> action are to be settled for a present monetary benefit of up to $3,750,000.00, inclusive of attorney's fees and costs.  This amount does not include the fees and/or costs to be paid to Rosenthal & Company (the Class Action Administrator), which are to be paid separately by Boston Market.  Fifteen percent ($562,500) of the present monetary benefit will be allocated to the <u>Barile</u> litigation.  Eighty-five percent ($ 3,187,500) of the present monetary benefit will be allocated to the <u>Rippee</u> litigation.

<u>Reclassification</u>

Boston Market has agreed to reclassify as "non-exempt" all members of the <u>Barile</u> class who at the time of reclassification are employed by Boston Market.  The reclassification will be implemented by December 31, 2006.

<u>Changes in Time-Keeping and Payroll Systems</u>

Boston Market has already implemented changes to its time-keeping and payroll systems so that in instances where a member of the <u>Barile</u> or <u>Rippee</u> class works a shift in excess of five hours without a corresponding entry showing that the employee clocked out for a legally adequate meal break period, that employee automatically receives an amount equal to one hour of pay at the employee's regular rate of compensation with his or her next paycheck (unless the shift is no more than six hours in length and the employee has waived the meal break).

<u>Training</u>

By December 31, 2006, Boston Market will conduct training sessions for members of

1  the Barile class and Rippee class who are then employed at any of its California restaurants.
2  The training sessions will inform them of their rights regarding rest breaks.  This training will
3  include the distribution of a written notice in Spanish and English.

4

5  Attorney's Fees and Costs

6       Plaintiffs seek attorney's fees of up to $1,500,000.00 and all costs of litigation up to
7  $15,000.  Defendant does not object to this request.

8

9                    **III.  DISCUSSION**

10

11  A.  Appropriateness of Final Settlement Approval

12       A court may approve a settlement upon finding that it is fair, reasonable, and
13  adequate.  Fed. R. Civ. P. 23(e)(1)(C).  In determining whether a proposed class action
14  settlement is fair, reasonable, and adequate, a court may consider some or all of the
15  following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and
16  likely duration of further litigation; (3) the risk of maintaining class action status throughout
17  the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the
18  stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a
19  governmental participant; and (8) the reaction of the class members to the proposed
20  settlement.  Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998).

21       Not all of the abovementioned factors will apply to every class action.  "This list is not
22  exclusive and different factors may predominate in different factual contexts."  Torrisi v.
23  Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted).  Ultimately, the
24  district court's determination is an "amalgam of delicate balancing, gross approximations, and
25  rough justice."  Officers for Justice v. Civil Service Comm'n of the City and County of San
26  Francisco, 688 F.2d 615, 625 (9th Cir. 1982) (quoting City of Detroit v. Grinnell Corp., 495
27  F.2d 448, 468 (2d Cir. 1974)).

28       Upon consideration of the various factors, the Court finds that the proposed settlement

is fair, reasonable, and adequate.

        1.      <u>Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation</u>

Continued litigation of both the <u>Barile</u> and <u>Rippee</u> class actions would involve extensive discovery, great expense, the possibility of protracted litigation and appeals, and a real risk that Plaintiffs would not ultimately prevail.

Both <u>Barile</u> and <u>Rippee</u> raise issues of law that are unsettled.  With respect to the meal and rest period claims alleged in both actions, it is unclear whether violations of Cal. Labor Code § 226.7 constitute wages or penalties.  The California appellate courts have split on the question, and the issue is currently pending before the California Supreme Court.  The Labor Commissioner has issued an order finding that payments for the meal and rest breaks are a penalty.  <u>Hartwig v. Orchard Commercial, Inc.</u>, DLSE Case No. 12-56901 RB.

The issue of whether Boston Market's General Managers are non-exempt is also subject to dispute.  In January, 2006, the Department of Labor ruled against a Boston Market General Manager seeking overtime compensation, finding that he was properly classified and compensated as a salaried exempt employee.  (Joint Exhibit 4.)

Given the uncertainties in the law and the substantial risk and expense involved in pursuing the litigation to a conclusion, the proposed settlement is fair, reasonable, and adequate.

        2.      <u>Amount Offered in Settlement</u>

The settlement provides a genuine and significant benefit to the members of the class. In addition to the present monetary benefit ($3,750,000.00 inclusive of attorney's fees and costs), the class members will receive substantial future benefits.

In <u>Barile</u>, all members of the class will be reclassified as non-exempt.  This reclassification will provide an ongoing benefit to the class members.  Assuming General Managers work an average of 15 hours per week in overtime, the value of the future monetary benefit is approximately $5,203,125.00 over the next five years.

1    In Rippee, class members are already benefitting from changes in the punch-clock
2    system that ensure that an employee who does not receive an adequate meal break is paid
3    one hour's worth of wages in their next paycheck.  Plaintiffs estimate the value of this change
4    to be approximately $5,162,587 to hourly employees over the next five years.   Class
5    members will also receive training regarding their rights to rest breaks.

6

7        3.    Experience and Views of Counsel

8    Counsel for Plaintiffs and counsel for Boston Market are experienced and
9    sophisticated attorneys who  are knowledgeable about the legal and factual issues in these
10   cases.   Counsel for Plaintiffs and counsel for Boston Market agree that the proposed
11   settlement is fair, reasonable, and adequate.

12

13       4.    Extent of Discovery and Stage of Proceedings

14   "The extent of discovery may be relevant in determining the adequacy of the parties'
15   knowledge of the case."  Manual for Complex Litigation (Third) 30.42 (1995).  Substantial
16   discovery was conducted in the Rippee case.  Although the parties may not have engaged
17   in much discovery in Barile, the Court finds that the parties arrived at the settlement based
18   on a full understanding of the legal and factual issues underlying the case.

19

20       5.    Reaction of Class Members to the Proposed Settlement

21   Class members have conveyed to class counsel and the class representatives that
22   they are pleased with the settlement.  (Declarations of Lorens, Cadena, Barile, Rippee, and
23   Ponce.)  There have been no objections to either of the two settlements.

24   The Claims Administrator received Requests for Exclusion from 44 class members.
25   Subsequently, the Claims Administrator mailed a letter to each of these individuals, informing
26   them of the amount of their individual claims under the Settlement Agreement and giving
27   them the opportunity to opt-in.  Two individuals withdrew their prior Requests for Exclusion.
28   The number of individuals who chose to remain excluded from the settlement is very small

1   given the size of the classes.

2       The Court is convinced that the class members received "the best notice practicable

3   under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  The Court previously approved the

4   form of notice which fairly apprised the class members of the terms of the settlement and

5   their options.  The method by which class counsel notified class members was also sufficient.

6   After updating the Class Member List using the National Change of Address system, the

7   Claims Administrator caused the Notice Packets to be mailed by First Class postage.

8       Admirably, Defendant took additional steps to make sure that the class members

9   received adequate notice.  Defendant agreed to pay for Spanish speaking translators to

10  answer questions regarding the claim forms and paid to translate the claim form into

11  Spanish.   In addition, Defendant agreed to additional national address searches on

12  approximately 1,400 claim forms that were returned as undeliverable.

13

14  B.    Motion for Attorney's Fees, Costs, and Class Representative Enhancements

15

16      1.    Attorney's Fees

17      Plaintiffs request attorney's fees in the amount of $1,500,000.00.  The Court finds that

18  the requested attorney's fees are fair and reasonable.

19      In a common fund case, the district court has discretion to apply either the lodestar

20  method or percentage-of-the-fund method in calculating a fee award.  Fischel v. Equitable

21  Life Assurance Soc'y of the United States, 307 F.3d 997, 1006 (9th Cir. 2002).   The

22  requested fees are reasonable under either method.

23      The requested fees equal 40% of the immediate monetary fund.  The Ninth Circuit has

24  established 25% of the common fund as the "benchmark" award for attorney's fees.  Torrisi

25  v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).  However, 25% may be

26  unreasonable in some cases.  Id.  In determining whether the benchmark percentage should

27  be adjusted, courts may consider factors such as the quality of counsel, the benefits obtained

28  for the class, the complexity of the issues, and the risk of nonpayment.  In re Quintus Sec.

1  Lit., 148 F. Supp. 2d 967, 973-74 (N.D. Cal. 2001).

2        Here, an upward adjustment is warranted.  When taking into account *future* monetary
3  benefits over the next five years, the requested fees equal approximately 10.6% of the total
4  estimated monetary value ($14,115,712.00).  The Court finds that these future monetary
5  benefits, although not guaranteed, are likely to accrue.

6        Plaintiffs have identified similar wage and hour cases where judges have awarded
7  fees equaling  35%-45% of the present monetary benefit. (Pl.'s Mem. of P. & A. at 6.)  The
8  fees requested by Plaintiffs are reasonable in light of the very favorable result obtained by
9  counsel, counsel's skill, and the substantial financial risk undertaken by counsel.

10       The requested fees are also reasonable under a lodestar analysis.  The hourly rate
11  and time spent by counsel were reasonable.  A multiplier of 3.23 would be appropriate for
12  the reasons discussed above.

13

14  2.    Costs

15       The parties have agreed that costs shall be capped at $15,000.  Upon review of the
16  costs incurred by counsel (actually totaling $19,054.86), the Court finds that the requested
17  costs are more than reasonable.

18

19  3.      Class Representative Enhancements

20       When determining incentive awards, courts may consider the following factors: (1) the
21  risk to the class representative in commencing suit, both financial and otherwise; (2) the
22  notoriety and personal difficulties encountered by the class representative; (3) the amount
23  of time and effort spent by the class representative; (4) the duration of the litigation and; (5)
24  the personal benefit (or lack thereof) enjoyed by the class representative as a result of the
25  litigation.  Van Vraken v. Atlantic Richfield Co., 901 F. Supp. 294, 300 (N.D. Cal. 1995).

26       Rippee and Ponce have requested an incentive award of $5,000 each.  There is no
27  question that this nominal amount is a reasonable award for Rippee and Ponce's
28  participation in the litigation.

1    Barile seeks an incentive award of $20,000.  The Court finds that this award is
2  appropriate and reasonable.  Barile took a very active role in the litigation and provided
3  valuable assistance to class counsel.  She spent at least 200.7 hours working on the case,
4  including reviewing documents, assisting with witness interviews, and meeting with class
5  counsel.

6

7                              IV.  **CONCLUSION**

8    For the reasons discussed above, the Court gives final approval to the settlement and
9  awards the requested attorney's fees, costs, and class representative enhancements.  The
10 Clerk shall enter final judgment dismissing both the Barile and Rippee cases with prejudice.
11 The Court shall retain jurisdiction to enforce the terms of the settlement agreement.  The
12 status conference scheduled for December 19, 2006, is hereby **VACATED**.
13 **IT IS SO ORDERED.**

14

15 DATED:  October 10, 2006

16

17                              Hon. Barry Ted Moskowitz
                               United States District Judge
18

19

20

21

22

23

24

25

26

27

28

                                        9                05cv1359 BTM(JMA); 05cv1360 BTM(JMA)